UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT LONDON

CIVIL ACTION NO. 13-100-WOB-CJS

DEBRA LEE MINIARD                                                                              PLAINTIFF

v.                              REPORT AND RECOMMENDATION

CAROLYN W. COLVIN, Acting
Commissioner of Social Security                                                                DEFENDANT

\* \* \* \* \* \* \* \* \* \*

Plaintiff Debra Miniard brings this action under 42 U.S.C. § 405(g) challenging Defendant Commissioner's final decision denying her application for benefits under Title II of the Social Security Act. This matter has been referred to the undersigned for preparation of a Report and Recommendation under 28 U.S.C. § 636(b)(1)(B). (R. 13). At issue is whether the Administrative Law Judge (ALJ) erred in finding Plaintiff "not disabled" and, therefore, not entitled to benefits. As explained below, the ALJ failed to satisfy the procedural requirements outlined in the regulations for evaluating the opinions of treating physicians. It will therefore be **recommended** that the Commissioner's Motion for Summary Judgment (R. 16) be **denied,** Plaintiff's Motion for Summary Judgment (R. 12) be **granted in part,** and the matter be **remanded** to the Commissioner.

I.      STANDARD OF REVIEW AND THE ADMINISTRATIVE PROCESS

In reviewing the decision of an ALJ in social security cases, the only issues before the reviewing court are whether the ALJ applied the correct legal standards and whether the decision is supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Blakley v.*

*Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009). The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Blakley*, 581 F.3d at 406. "The substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Id*. (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Thus, even if the evidence could also support another conclusion, the decision of an ALJ must stand if the evidence could reasonably support the conclusion reached. *Id.* (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

In this case, Plaintiff must establish that she is disabled within the meaning of the Social Security Act in order to qualify for benefits. 42 U.S.C. § 423(a)(1). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Social Security Act requires the Commissioner to follow a five-step process when making a determination on a claim of disability. *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 803-04 (6th Cir. 2008) (citing *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990)); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). First, a claimant must demonstrate that she is not currently engaged in "substantial gainful activity." *Vance*, 260 F. App'x at 803 (citing 20 C.F.R. §§ 404.1520(b), 416.920(b)). Second, if the claimant is not engaged in substantial gainful activity, she must demonstrate that he suffers from a severe impairment. *Id*. at 803-04. "A 'severe impairment' is one which 'significantly limits . . . physical or mental ability to do basic work activities.'" *Id*. at 804 (citing 20 C.F.R. §§ 404.1520(c), 416.920(c)). Third, if the claimant is not

performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets or equals a listed impairment located at 20 C.F.R. pt. 404, subpt. P, app'x 1, then the claimant is presumed disabled regardless of age, education or work experience. *Id.* (citing 20 C.F.R. §§ 404.1520(d), 416.920(d)). Fourth, the claimant is not disabled if her impairment(s) does not prevent her from doing her past relevant work. *Id.* Lastly, even if the claimant cannot perform her past relevant work, she is not disabled if she can perform other work which exists in the national economy. *Id.* (citing *Abbott*, 905 F.2d at 923). Throughout this process, the claimant carries the overall burden of establishing that she is disabled, but the Commissioner bears the burden of establishing that the claimant can perform other work existing in the national economy. *Id.* (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004)).

## II.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On December 12, 2006, Plaintiff filed a Title II application for a period of disability and disability insurance benefits. (A.R. 284). She claimed disability beginning April 14, 2006, based on chronic pain in her back and difficultly walking. (*Id.* at 525). She was forty-six years old at the alleged disability onset date, has a G.E.D., is able to communicate in English, and had past relevant work experience as a monitor technician. (*Id.* at 296). Her claim was denied initially and upon reconsideration. (*Id.* at 393). Plaintiff then filed a request for a hearing before an ALJ, and this hearing was held on May 29, 2008 (*Id.*). On October 23, 2008, the ALJ entered an unfavorable decision. (*Id.* at 284). The Appeals Council issued a Remand Order on April 12, 2011, for further consideration. (*Id.*). The Remand Order instructed the ALJ to do the following: (1) further evaluate the severity and functional limitations of carpal tunnel syndrome; (2) obtain additional evidence related to Plaintiff's impairments, including Plaintiff's carpal tunnel; (3) further evaluate Plaintiff's

subjective complaints; (4) give further consideration to Plaintiff's maximum residual functioning capacity, including an evaluation of the treating source opinion pursuant to the Social Security Administration's regulations and rulings and explanation of the weight given to such evidence; (5) further evaluate Plaintiff's ability to perform past relevant work; and (6) if warranted, obtain supplemental evidence from the vocational expert. (*Id.* at 47).

On November 15, 2011, the ALJ held a second video hearing. At this hearing, the ALJ received testimony from Plaintiff and vocational expert Linda Taber, and Plaintiff was represented by attorney David Bray. (*Id.*). After receiving testimony and reviewing the record, the ALJ issued a second written decision based on his consideration of the evidence, using the five-step sequential evaluation for determining disability. (*Id.* at 284-97).

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful employment activity since April 14, 2006, the alleged onset date. (A.R. 286). At step two, the ALJ determined that Plaintiff had the following severe impairments: degenerative joint disease of the left knee; morbid obesity; degenerative disc disease of the lumbar spine L4-L5 and L5-S1, with chronic back pain; major depressive disorder; anxiety disorder, not otherwise specified; and signs and symptoms of mild carpal tunnel syndrome bilaterally. (*Id.* at 286-87).

At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments under the applicable Federal Regulations. (A.R. 288).

At step four, the ALJ considered the evidence and determined that Plaintiff had the residual functioning capacity (RFC) to perform light work. (*See* A.R. 291). The ALJ heard testimony from

the vocational expert (VE), who stated that based on the RFC provided by the ALJ, Plaintiff could not perform any past relevant work. (*Id.* at 296).

The ALJ proceeded to step five and adopted the VE's opinion that, given the stated RFC, there were other jobs in the national economy that Plaintiff would be able to perform, namely representative occupations such as assembly and gatekeeper. (A.R. 297). Accordingly, on December 11, 2011, the ALJ determined that Plaintiff was not "disabled," for social security purposes. (*Id.*).

Plaintiff appealed the ALJ's decision to the Social Security Appeals Council. On March 25, 2013, the Appeals Council denied Plaintiff's timely request for review of the ALJ's decision, rendering the ALJ's December 11, 2011, decision the final decision of the Commissioner. (A.R. 1-3). On May 14, 2013, having exhausted her administrative remedies, Plaintiff timely filed a Complaint asserting the ALJ's decision was erroneous. (*See* R. 1). The matter has culminated in cross-motions for summary judgment. (R. 12, 16). These Motions have been referred to the undersigned for preparation of a Report and Recommendation under 28 U.S.C. § 636(b)(1)(B) (R. 13), and the Motions are now ripe for consideration.

### III. ANALYSIS

Plaintiff raises the following two arguments on appeal: (1) the ALJ improperly evaluated the medical opinions of Plaintiff's treating physician and a state agency consultive examiner; and (2) the ALJ improperly determined that Plaintiff's impairments did not meet the listed impairment of Section 1.02. (R. 12-1, at 9, 13).

### A. The ALJ erred by failing to assign weight to the opinions of Dr. Sharma, Plaintiff's treating physician.

Plaintiff argues that the ALJ improperly evaluated the medical opinion of Dr. Sharma, Plaintiff's treating physician. (R. 12-1, at 10). In April 2006, Plaintiff's primary care physician referred her to see Dr. Sharma, an orthopedic surgeon. (A.R. 593). Plaintiff first saw Dr. Sharma on May 2, 2006, for problems she was experiencing with her left knee. (*Id.* at 926). Dr. Sharma performed multiple surgeries on Plaintiff, including a right carpal tunnel release in December 2008 (*id.* at 2044), a total left knee replacement in April 2009 (*id.* at 1491), removal of the knee implants with an insertion of spacers (*id.* at 1819), and a second stage revision of the total left knee replacement in October 2009 (*id.* at 1820). On November 23, 2008, Dr. Sharma completed an RFC questionnaire. (*Id.* at 1481).

In evaluating opinion evidence under 20 C.F.R. § 404.1527(c), the opinions of treating physicians are given substantial, if not controlling, deference in social security disability proceedings. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004); 20 C.F.R. § 404.1527(c)(2). An ALJ must give the opinion of a treating source controlling weight if he finds the opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2).

Moreover, if a treating physician's opinion is not given controlling weight, "the medical opinion of a treating physician must be accorded greater weight than those of physicians employed by the government to defend against a disability claim." *Hall v. Bowen*, 837 F.2d 272, 276 (6th Cir. 1988). But the opinion of a treating physician is entitled to greater weight only if it is based on sufficient medical data, *Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 367 (6th Cir.

1984), and is not contradicted by substantial evidence to the contrary, *Loy v. Sec'y of Health & Human Servs.*, 901 F.2d 1306, 1308-09 (6th Cir. 1990). Thus, the Commissioner is not bound by the opinion of a treating physician when the opinion is contradicted by objective medical evidence. *Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992).

Yet the applicable regulation also contains a clear procedural requirement: an ALJ must give good reasons for rejecting the opinions of treating physicians. 20 C.F.R. § 1527(c)(2); *see also Wilson,* 378 F.3d at 544. These reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Wilson*, 378 F.3d at 544 (quoting Soc. Sec. Rul. (SSR) No. 96-2p, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996)). The ALJ must identify the substantial evidence that is inconsistent with the physician's opinion, *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 377 (6th Cir. 2013), and "must not be vague or overly general," *Willlis v. Colvin*, No. 12-50-DLB, 2013 WL 4591236, at *3 (E.D. Ky. Aug. 28, 2013). This procedural requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Wilson*, 378 F.3d at 544.

If the ALJ does not give the treating physician's opinion controlling weight, he must determine what weight to assign the treating physician's opinion by considering the five factors outlined in 20 C.F.R. §§ 404.1527(c)(1)-(5). *Gayheart*, 710 F.3d at 376; *Willlis,* 2013 WL 4591236, at *3. Failure to weigh the factors in 20 C.F.R. § 404.1526(c)(2) will result in remand. *Gayheart*, 710 F.3d at 380. This standard requires a separate analysis from the ALJ's determination not to give

7

a treating physician controlling weight. *Allums v. Comm'r of Soc. Sec.*, No. 1:12 CV 2245, 2013 WL 5437046, at *3 (N.D. Ohio Sept. 27, 2013) (citing *Gayheart*, 710 F.3d at 375-76).

Here, the ALJ explained his analysis of Dr. Sharma's opinions as follows:

> The claimant's surgeon, Dr. Mukut Sharma, opined on November 23, 2008 that the claimant could walk less than a block, sit no more than 20 minutes at a time for a total of one hour, stand no more than 15 minutes at a time for a total of one hour, and should be afforded the opportunity to shift her position at will and take frequent unscheduled breaks lasting 30 minutes. (Exhibit 19F, pp. 2, 3). He suggested that she should avoid prolonged sitting and must elevate her leg for three to four hours. (Exhibit 19F, p. 3). Dr. Sharma also speculated that claimant would be absent more than four days a month due to her impairments. (Exhibit 19F, p. 4). He indicated that she could never lift 10 pounds or more and should never twist, stoop, crouch, squat, or climb ladders or stairs. (Exhibit 19F, pp. 3, 4). Dr. Sharma opined that the claimant could grasp, turn, and twist objects with her hands 10% of the workday, perform fine manipulations 20% of the day and reach 20% of the day. (Exhibit 19F, p. 4). It is significant to note that this opinion predates both the right carpal tunnel release and the total left knee replacement as did the opinion of the state consultant who opined that the claimant could perform medium exertion work, stand or walk six hours, sit six hours, but never climb a rope, ladder, or scaffold. (Exhibit 10F, pp. 2, 3). In weighing the evidence the undersigned Administrative Law Judge gave consideration to the subsequent improvement in the claimant's condition following her surgeries. The undersigned gave no weight to the additional conclusory opinion expressed by Dr. Sharma that the claimant was incapable of performing even a low stress job. (Exhibit 19F, p. 2). Such a determination does not involve a medical opinion, but rather requires an administrative finding based upon the Regulations and legal standards set forth therein which is reserved exclusively to the commissioner. (20 CFR 404.1527(e)(2)).

(A.R. 294).

Plaintiff argues that the ALJ improperly evaluated Dr. Sharma's opinions when he failed to state what weight, if any, he gave to Dr. Sharma's opinions. (R. 12-1, at 9). Failure to assign a specific weight to the opinion of a treating physician alone constitutes error. *Cole v. Astrue*, 661 F.3d 931, 938 (6th Cir. 2011). While the ALJ discusses Dr. Sharma's RFC assessment, the ALJ fails to identify the weight he assigned to Dr. Sharma's opinions. (*See* A.R. 294). Although the ALJ

8

decision does state that he gave no weight to Dr. Sharma's "additional conclusory opinion . . . that the claimant was incapable of performing even a low stress job," (*id.*), this statement only pertains to one small part of Dr. Sharma's opinion. The ALJ's decision leaves the Court with no additional insight as to the weight assigned to the remainder of Dr. Sharma's opinions. Because the ALJ did not identify the weight he assigned to Dr. Sharma's opinions, he violated the treating physician rule. *See Cox v. Astrue*, No. 6:11-cv-319, 2012 WL 1576113, at *2 (E.D. Ky. May 4, 2012) (holding the ALJ erred when he failed to identify the weight assigned to a treating physician's opinion). As a result, the Court is unable to make a determination on whether the ALJ properly evaluated Dr. Sharma's opinions. *See Coleman v. Astrue*, No. 12-172, 2013 WL 173196, at *4 (E.D. Ky. Jan. 16, 2013) (the court could not assess whether the ALJ erred where there is no mention of the weight given to a treating physician's opinion).

The Commissioner argues that even assuming the ALJ erred in evaluating Dr. Sharma's opinions, the error does not require remand. (R. 16, at 12). A violation of the treating physician's rule requires remand unless the error was harmless. The error is deemed harmless if it meets any one of the following three criteria: (1) the treating source's opinion is so patently deficient that the Commissioner could not possibly credit it; (2) the Commissioner adopts the treating source's opinion or makes findings that are consistent with the opinion; or (3) the Commissioner has met the goal of the treating physician's rule even though he has not complied with the terms of the regulation. *Cole*, 661 F.3d at 940; *Coleman*, 2013 WL 173196, at *5. Here, the Commissioner focuses on the third criteria and argues the error is harmless in this case because the ALJ has met the goal of the treating physician rule even though he has not complied with the terms of the regulations. (R. 16, at 12).

9

An ALJ's failure to follow the treating physician's rule is not harmless error where the Court cannot engage in meaningful review of the ALJ's decision. *Blakley*, 581 F.3d at 409; *Johnson-Hunt v. Comm'r of Soc. Sec.*, 500 F. App'x 411, 420 (6th Cir. 2012). As explained above, the Court is unable to engage in a meaningful review of the ALJ's decision because the ALJ completely failed to identify the weight he assigned to Dr. Sharma's opinion and outline his reasons for that weight. For example, although the ALJ's credited Dr. Sharma's opinion that Plaintiff requires a sit/stand option, he seemingly rejected the remainder of Dr. Sharma's opinions without explanation. (A.R. 295). The ALJ's lack of analysis and explanation hinders the Court's ability to discern whether the ALJ properly evaluated Dr. Sharma's opinions. *See Zaft v. Comm'r of Social Sec.*, No. 12-13415, 2013 WL 5340772, at *12 (E.D. Mich. Sept. 23, 2013) (finding the ALJ's failure to comply with the treating source rule not harmless where the ALJ's failure to engage in the proper analysis left the court without a clear understanding of his decision). As such, the Court cannot say that the ALJ's decision met the goal of 20 C.F.R. § 404.1527. *See Cummings v. Comm'r of Soc. Sec.*, No. 3:11-CV-614, 2013 WL 1192817, at *6 (E.D. Tenn. Mar. 22, 2013) (the Commissioner could not show that the ALJ's decision met the goal of the treating physician rule where the ALJ failed to explain what weight he assigned to the treating physician's opinion); *Coleman*, 2013 WL 173196, at *5 (same).

To support her position that the ALJ's decision meets the goals of the regulations, the Commissioner cites to *Nelson v. Commissioner of Social Security*, 195 F. App'x 462 (6th Cir. 2006), and argues the ALJ indirectly attacked and impliedly rejected Dr. Sharma's opinions. (R. 16, at 13). In *Nelson*, the Sixth Circuit held that the ALJ met the goal of the treating physician rule when the ALJ indirectly attacked the consistency and supportability of a treating physician's opinions with

other contrary evidence of record. *Nelson*, 195 F. App'x at 472. In making this determination, the court cautioned that *Nelson* was "a rare case of the ALJ's analysis meeting the goal of the rule even if not meeting its letter." *Id.*

This is not one of those rare cases where, despite his error, the ALJ's analysis met the goal of the treating physician rule. Unlike in *Nelson*, the ALJ in this case did not indirectly attack Dr. Sharma's opinions with other inconsistent evidence of record. For example, the ALJ explained that in weighing Dr. Sharma's opinions, he gave consideration to Plaintiff's subsequent improvement following her surgeries. (A.R. 294). However, the ALJ fails to identify any evidence to support this proposition. In fact, Dr. Sharma's treatment notes indicate that Plaintiff continued to have problems following her total knee replacement and considered undergoing a fifth knee surgery. (*Id.* at 2047, 2059-62). Although the Commissioner's brief highlights other evidence of record that is potentially inconsistent with Dr. Sharma's opinions, the ALJ's decision does not. Furthermore, even if the Court were to find that substantial evidence supports the ALJ's treatment of Dr. Sharma's opinions, "substantial evidence alone does not excuse non-compliance with 20 C.F.R. § 404.1527(d)(2) as harmless error." *Blakley*, 581 F.3d at 410.

For the reasons stated above, the ALJ's failure to follow the treating physician rule does not constitute harmless error, and remand is required. The Sixth Circuit has explained, "[w]e do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion." *Wilson*, 378 F.3d at 545 (quoting *Halloran v. Barnhart,* 362 F.3d 28, 33 (2d Cir. 2004)).

**B. The ALJ should clarify the weight he assigned to consultative examiner, Dr. Lynch.**

Plaintiff further argues that the ALJ erred when he failed to identify the weight, if any, given to the opinions of Greg V. Lynch, Ph.D., a state agency consultative examiner. (R. 12-1, at 11). Dr. Lynch opined that:

> [Plaintiff's] capacity to understand, remember and carry out instructions toward performance of simple, repetitive tasks is affected by the impairment with slight limitations noted. Her ability to tolerate stress and pressure of day-to-day employment is affected by the impairment with moderate limitations noted. Her ability to sustain attention and concentration towards performance of simple, repetitive tasks is affected by the impairment with slight limitations noted. Her ability to respond appropriately to supervision, coworkers, and work pressures in a work setting is affected by the impairment with moderate and marked limitations noted.

(A.R. 679).

The ALJ's decision does not identify what weight he assigned to Dr. Lynch's opinions. It is true that the ALJ need not give good reasons for rejecting opinions of consultative examiners. *Burton v. Astrue*, No. 5:12-208, 2013 WL 85073, at *6 (E.D. Ky. Jan. 7, 2013). However, the Social Security Administration requires that ALJs explain the weight given to opinions of state agency medical and psychological consultants. Soc. Sec. Rul. (SSR) 96-6-p, 1996 WL 374180, at *2 (Soc. Sec. Admin. July 2, 1996). Ultimately, whether the ALJ erred in his treatment of Dr. Lynch's opinions need not be decided at this time, in light of the recommended remand as to the treating physician opinion evidence. The opportunity for clarifying the weight assigned to Dr. Lynch's opinions will be available to the ALJ on remand.

**C. The ALJ properly determined that Plaintiff's impairments do not meet or equal the listed impairment of Section 1.02.**

Plaintiff argues that the ALJ erred at step three by not finding that Plaintiff met the disability requirements for having a major dysfunction of a joint(s) under Listing 1.02. (R. 12-1, at 13). In evaluating whether Plaintiff's impairments met or equaled the listed impairment of Section 1.02, the ALJ determined that there was no evidence of an inability to ambulate effectively or perform fine and gross movements effectively. (A.R. 289). Substantial evidence supports the ALJ's determination.

The regulation, "Evaluation of disability of adults, in general" states:

> When your impairment(s) meets or equals a listed impairment in Appendix 1. If you have an impairment(s) which meets the duration requirement and is listed in Appendix 1 or is equal to a listed impairment(s), we will find you disabled without considering your age, education, and work experience.

20 C.F.R. § 416.920(d). Appendix 1 is found at 20 C.F.R. pt. 404, subpt. P, app'x 1:

> 1.02 Major dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
>
> A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b;
>
> or
>
> B. Involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c.

A plaintiff carries the burden of showing that her impairment meets or equals the specific criteria of a listed impairment. *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001). Also, a plaintiff must produce evidence to support the existence of *all* of the requirements of a listed impairment;

indeed, a lack of such evidence provides substantial evidence to support a finding that a plaintiff does not meet the listing. *See Hale v. Sec'y of Health & Human Servs.*, 816 F.2d 1078, 1083 (6th Cir. 1987) (Listing 1.05(C) context) (citing *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984)).

To meet the requirements of Listing 1.02, a claimant must demonstrate an inability to ambulate effectively. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.02(A). The regulations define ineffective ambulation as "having insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00(B)(2)(b)(2). In addition, "[t]he inability to ambulate effectively . . . must have lasted, or be expected to last, for at least 12 months." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00(B)(2). The regulations provide examples of an inability to ambulate which includes an inability to walk without the use of a walker or two canes and an inability to walk a single block on an uneven surface at a reasonable pace or an inability to shop. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 100(B)(2)(b)(2); *Little v. Astrue*, No. 07-383, 2008 WL 3849937, at *5 (E.D. Ky. Aug. 15, 2008).

Plaintiff claims that the record supports Plaintiff's allegation that she has difficulty ambulating as a result of her continuing knee problems. (R. 12-1, at 13). Furthermore, Plaintiff cites to Dr. Sharma's observation that Plaintiff's walking was stiff and tender and Dr. Wicker's note that Plaintiff was unable to ambulate well. (*Id.* at 13-14). She argues that the requirements of Listing 1.02 are met because she has used a carriage and walker as support. (R. 12-1, at 13). There is evidence in the record that on one occasion, Plaintiff did use a carriage/walker as support while walking. (A.R. 955, 314). However, Plaintiff has not identified other evidence of her regularly using a walker for support. Additionally, at the November 15, 2011, hearing, Plaintiff testified that

14

she has used a cane for the past four years. (*Id.* at 314). Use of a single cane would only limit the functioning of one upper extremity at a time. Accordingly, Plaintiff's use of a cane does not satisfy the requirements in Listing 1.02. *See Rector v. Astrue*, No. 2:10-cv-65, 2010 WL 4736831 at *6 (E.D. Ky. Nov. 15, 2010) (holding that the plaintiff's use of a single cane did not satisfy the regulations' requirement that the hand-held device limit the functioning of both upper extremities).

In addition, there is substantial evidence that Plaintiff was able to ambulate without an assistive device. (A.R. 1933, 1937, 1960, 1970). In fact, Plaintiff's orthopedic surgeon, Dr. Sharma, ultimately opined that Plaintiff did not require a cane or assistive device while ambulating. (*Id.* at 1483). Likewise, Plaintiff is able to do some household chores, attend to her granddaughter's needs, cook, and do laundry. (*Id.* at 547-52). Accordingly, substantial evidence supports the ALJ's determination that Plaintiff's impairments do not meet Listing 1.02.

## IV. CONCLUSION

As explained above, the ALJ's consideration of the treating physician opinion evidence necessitates remand, at which time the ALJ can also address clarifying the record as to the weight assigned to the consultative examiner's opinions. Accordingly, **IT IS RECOMMENDED** that:

1. Defendant's Motion for Summary Judgment (R. 16) be **denied;**

2. Plaintiff's Motion for Summary Judgment (R. 12) be **granted in part** as to Plaintiff's request for a reversal of the Commissioner's decision and remand, and **denied in part** to the extent Plaintiff requests a court-ordered award of benefits; and,

3. the Decision be **reversed** and the matter **remanded** to the Commissioner under sentence four of 42 U.S.C. § 405(g), with instructions to reconsider and adequately explain the treatment of the opinions of Dr. Sharma and Dr. Lynch.

Specific objections to this Report and Recommendation must be filed within **fourteen (14) days** of the date of service or further appeal is waived. 28 U.S.C. § 636(b)(1)(c); *Thomas v. Arn*, 728 F.2d 813, 815 (6th Cir.), *aff'd*, 474 U.S. 140 (1985). A party may file a response to another party's objections within **fourteen (14) days** after being served with a copy thereof. Fed. R. Civ. P. 72(b).

Dated this 28th day of April, 2014.

Signed By:
*Candace J. Smith*
**United States Magistrate Judge**

G:\DATA\social security\13-100 Miniard R&R.wpd